In re Estate of Isaac T. Cook v. David Brown, Appellant.—140 S. W. (2d) 42.

Division One, May 7, 1940.

*Charles A. Lich* for appellant.

282

*E. W. Banister* for respondent.

HAYS, P. J.—Appeal from a judgment of the circuit court of the City of St. Louis which affirmed a judgment of the probate court

denying to a demand, filed by the present appellant against the estate of Isaac T. Cook, deceased, classification as a fourth class claim and placing it in the fifth class. On September 21, 1931, during the lifetime of Cook, appellant obtained a judgment against him in the superior court of Cook County, Illinois. Later he brought suit on this judgment in the circuit court of the City of St. Louis. Before trial Cook died. Appellant then revived the action against Cook's executors and the circuit court rendered judgment in his favor and certified the same to the probate court. Appellant there asked that this judgment be classified in the fourth class because it was founded on a judgment rendered against Cook during his lifetime. The probate court refused to do so and placed the claim in the fifth class, and the circuit court, on appeal, sustained that ruling.

The Illinois judgment appears to have been rendered upon warrant of attorney. Under this form of procedure a clause is inserted in a note or other contract for the payment of money to the effect that, if the obligor defaults, any attorney is empowered to enter his appearance in a court of record, waive the issuance and service of process and consent to judgment against him. After default, suit is filed in a court of record; some attorney, usually unknown to the obligor, enters the latter's appearance as defendant and judgment by confession is taken. The courts of Missouri do not approve such procedure, but where a sister state allows the practice and a judgment based thereon is duly rendered upon such a contract made in the state in which the proceeding is brought and in accordance with the authority contained in the contract, our courts have held that it is entitled to full faith and credit in Missouri. [First National Bank of Kansas City v. White, 220 Mo. 717, 120 S. W. 36. Cf. Vennum v. Mertens, 119 Mo. App. 461, 95 S. W. 292; O'Connell v. Smith et al., 131 S. W. (2d) 730.]

The mere fact that the St. Louis circuit court rendered judgment on this claim in favor of appellant does not in itself entitle the demand to be placed in the fourth class, for this judgment was rendered after Cook's death. Under Section 182, R. S. Mo. 1929, a judgment is entitled to fourth class standing only when rendered against the defendant "in his lifetime." Where, as here, a suit is brought against a living person and he dies before trial and the action is revived against his executor or administrator, such revival has the same force and effect as the filing of a demand on that date in the probate court. [Section 184, R. S. Mo. 1929.] So, in the instant case, we must assume that the situation is the same as if appellant had filed in the probate court a demand based upon the Illinois judgment.

It is contended by the appellant and conceded by the respondent that the judgment in Missouri did not supersede the Illinois judgment and that the latter was not merged in or destroyed by the former.

[Wolford v. Scarbrough, 224 Mo. App. 137, 21 S. W. (2d) 777, and cases cited.]

The decisive question then is this: Does the fact that appellant's demand was founded upon a judgment rendered by a court of a sister state during Cook's lifetime entitle it to be placed in the fourth class? The answer to that question depends on the construction to be given to the word "judgment" as used in Section 182. This court has held that the word "judgment," so used, refers only to domestic judgments and not to those rendered by the courts of sister states. [Harness v. Green's Admr., 20 Mo. 316; Gainey v. Sexton, 29 Mo. 449.] These cases, although decided at an early date, have never been overruled nor criticized by this court.

Appellant contends that such a construction of Section 182 is violative of the full faith and credit clause contained in Section 1, of Article IV of the Constitution of the United States. The same question was before the Supreme Court of the United States in the case of McElmoyle v. Cohen, 38 U. S. 312, 10 L. Ed. 177. The facts in that case clearly parallel those in the case at bar. The plaintiff therein had obtained judgment against the decedent during the latter's lifetime in the courts of South Carolina. Decedent had then removed to Georgia where he died. After his death action was brought in the Federal Circuit Court in Georgia upon the South Carolina judgment. The judges of the circuit court certified to the Federal Supreme Court two questions: (1) whether the Georgia statute of limitations applied to a suit in a federal court upon the South Carolina judgment; (2) whether the claim of plaintiff was entitled to preferred classification under a Georgia statute similar to our Section 182, which granted such preference in the settlement of decedent's estate to judgments rendered against the decedent in his lifetime. There, as here, it was argued by the claimant that under the full faith and credit clause the South Carolina judgment was entitled to the same classification as a domestic judgment in Georgia would have received. The supreme court decided both points adversely to the claimant, holding that the law of the forum (Georgia) governed questions of limitation and that the claim founded upon the South Carolina judgment was not entitled to be classified as a preferred claim in the manner in which a domestic Georgia judgment would have been classified. In a lengthy discussion of the history and policy underlying the full faith and credit clause the court pointed out that that provision simply gave finality to the judgment of a sister state as evidence of the validity of the debt upon which it was rendered and as a permanent disposition between the parties of the questions therein litigated, but did not entitle the foreign judgment to immediate enforcement in the manner provided for domestic judgments.

Appellant contends that since the decision of the court on the question of limitations would effectively dispose of the entire suit, what

was said about classification of the claim was purely *obiter dictum*. Evidently he overlooks that the decision, as noted above, was not only rendered upon *two* distinct questions certified to the supreme court by the judges of the circuit court, but also was *res judicata* alike as to each.

While the McElmoyle case seems to be the only decision of the Federal Supreme Court upon the question here directly involved, it has been cited with approval in many subsequent cases as stating the true nature and extent of the rights guaranteed by the full faith and credit clause. In Cole v. Cunningham, 133 U. S. 107, 1. c. 112, Mr. Chief Justice FULLER, speaking for the court, said:

"It (the Constitution) did not make the judgments of the states domestic judgments, to all intents and purposes, but only gave a general validity, faith and credit to them as evidence."

He cited with approval the McElmoyle case. Since the McElmoyle decision was rendered it has been uniformly held that in an action brought in one state upon a judgment of another state questions of limitation are governed by the law of the forum. And it is, of course, elementary that no execution can issue directly upon a foreign judgment but that such judgment must be sued upon like any other debt; the facts litigated, however, being conclusively established by the foreign judgment if the court rendering it had jurisdiction of the subject matter and of the person. Nor could it be contended that a foreign judgment by its own force creates any lien upon property in Missouri.

This court cited and followed the McElmoyle decision in the Harness and Gainey cases, supra, and we are satisfied that these cases properly construe Section 182. Appellant argues that they were all decided in an early period when the true extent and meaning of the full faith and credit clause was not fully understood by the courts or appreciated by the bar. On the contrary, it is to be noted that that clause was contained in the original Constitution and was carried over into the Constitution from the Articles of Confederation, and that the judges who decided the three cited cases were fully familiar with the unsettled conditions preceding the adoption of the Constitution which had made necessary the insertion of the full faith and credit clause into that instrument. [McElmoyle case discussion, 1. c. p. 325.]

Wherefore we are of opinion that the principles announced in these three cases rule the case at bar, and that the court below did not err in classifying the demand in suit as of the fifth class. The judgment is therefore affirmed. All concur.