Dolores SCHNEIDER, Plaintiff,

v.

NATIONAL RAILROAD PASSENGER
CORP., Defendant–Appellee,

v.

Robert S. MILLER, Intervenor–
Plaintiff–Appellant,

Greater Hartford Transit
District, Trustee.

No. 541, Docket 95–7435.

United States Court of Appeals,
Second Circuit.

Argued Nov. 28, 1995.

Decided Dec. 8, 1995.

David Thomas Ryan, Hartford, CT (Bradford S. Babbitt, Robinson & Cole, Hartford, CT, on the brief), for Defendant-Appellee National Railroad Passenger Corp.

William M. Bloss, New Haven, CT (Jacobs, Grudberg, Belt & Dow, New Haven, CT), for Intervenor–Plaintiff–Appellant Robert S. Miller.

Before: LUMBARD, ALTIMARI and JACOBS, Circuit Judges.

PER CURIAM:

Plaintiff–Intervenor Robert S. Miller, a Connecticut Deputy Sheriff, appeals from an order of the United States District Court for the District of Connecticut (Burns, *J.*), denying his motion for payment of sheriff's fees pursuant to Connecticut General Statute § 52–261(6). The motion was denied on the ground that service of the writ of execution was defective under Rules 69(a) and 4(c) of the Federal Rules of Civil Procedure, which require that all process (other than a subpoena or a summons and complaint) must be served by a United States marshal or deputy United States marshal, or by a person appointed by the court for that purpose. The district court also rejected Miller's argument that defendant-appellant National Railroad Passenger Corporation (hereinafter "Amtrak") waived its defense of insufficient service of process.

For the reasons set forth below, we affirm.

## BACKGROUND

In the underlying personal injury action brought by plaintiff Dolores Schneider, the district court entered judgment against Amtrak in the amount of $1.75 million. On October 16, 1992, Amtrak filed a timely notice appealing that judgment to this Court, but did not post a *supersedeas* bond, which (upon court approval) would have resulted in a stay of execution pursuant to Federal Rule of Civil Procedure 62(d). On January 11, 1993, before Amtrak's appeal was argued, Schneider applied to the district court for a writ of execution on the principal and interest in the grand total of $1.828 million. The district court issued the writ that same day, and Schneider took it to intervenor-plaintiff-appellant Robert S. Miller, a Deputy Sheriff in New Haven County, Connecticut. Later that afternoon, Miller served the writ of execution personally on an Amtrak claims supervisor in New Haven and mailed a copy of the writ to Amtrak's corporate secretary in Washington, D.C. On January 12, 1993, Miller served the writ by mail on the Connecticut Secretary of State. Accompanying each writ was a letter demanding a sheriff's fee of ten percent of the total judgment ($182,-819.80), as authorized by Connecticut General Statute § 52–356a.

Amtrak made no immediate effort to satisfy the judgment. On January 12, 1993, Miller seized an electric-powered Amtrak locomotive by wrapping bright yellow police tape around it, posting a seizure notice on it, and moving it to a sidetrack out of the way of other Amtrak operations. The locomotive had been scheduled to service Amtrak's daily passenger train from New York to Boston, which was delayed as a result of the locomotive's seizure. Faced with this disruption, Amtrak filed a motion to quash the writ of execution and a motion for a stay of execution of the judgment on the afternoon of January 12. Judge Burns denied Amtrak's motions the following day. On January 14, 1993, Miller, concerned that the value of a

single locomotive would not satisfy the judgment, seized a diesel Amtrak locomotive. Also that day, Amtrak filed (a) a motion in the district court for approval of a *supersedeas* bond in the amount of $2.011 million, and (b) a notice appealing the district court's denial of Amtrak's motions to quash and for a stay of execution. On January 15, 1993, this Court granted Amtrak's motion to stay or quash the execution, ordered all Amtrak property be returned to it, and ordered Amtrak to post a $2 million bond in the district court. On January 20, 1995, Judge Burns approved Amtrak's bond in the amount of $2.011 million.

This Court affirmed the judgment in the underlying case, *Schneider v. National Railroad Passenger Corp.*, 987 F.2d 132 (2d Cir. 1993), and Amtrak satisfied it, but Amtrak refused to pay Miller his $182,819 sheriff's fee. On April 5, 1993, Judge Burns granted Miller's motion to intervene as a plaintiff to collect the fee. Miller also moved to proceed against the bond for his fee pursuant to Federal Rule of Civil Procedure 65.1. On March 31, 1995, the district court denied Miller's motion for payment of sheriff's fees on the ground that execution was defective under Federal Rule of Civil Procedure 4(c). The district court also rejected Miller's contention that Amtrak, under Federal Rule of Civil Procedure 12(h), waived its right to object to service on the ground that Rule 12(h) is inapplicable to post-judgment motions. Miller filed a timely notice of appeal on April 19, 1995.

## DISCUSSION

### A. *Service.*

Miller argues that, pursuant to Federal Rule of Civil Procedure 69(a), Connecticut procedures may be applied in the execution of federal judgments. Rule 69(a) provides in relevant part:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in *accordance with the practice and procedure of the state in which the district court is held,* existing at

the time the remedy is sought, *except that any statute of the United States governs to the extent that it is applicable.*

Fed.R.Civ.P. 69(a) (West 1992) (emphasis added). Under Connecticut law, a writ of execution may be "directed to any levying officer." Conn.Gen.Stat.Ann. § 52–356a(a)(1) (West 1995). The term "levying officer" includes sheriffs and deputy sheriffs. *Id.* § 52–350a(12). Compensation for sheriffs and deputy sheriffs is statutorily fixed at ten percent of the levy. *Id.* § 52–261(6). Miller urges that, since he followed all other relevant Connecticut procedures for levying on property in satisfaction of a judgment, he has a right to collect ten percent of the levy.

■ We first note that Rule 69(a) adopts state procedures for execution only to the extent that they do not conflict with any applicable "statute of the United States." This term includes the Federal Rules of Civil Procedure, since they have the force and effect of federal statutes. 28 U.S.C.A. § 2072 (West 1994); *see also Oklahoma Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 942 (10th Cir.1992); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3012 (1973 & 1994 Supp.). Thus, under Rule 69(a) "if there is an applicable federal statute, it is controlling, as is also any relevant Civil Rule, since those rules have the force of a statute." Wright & Miller § 3012.

■ Rule 69(a) is thereby made subject to Rule 4(c), and Rule 4(c) trumps state law to the extent that it determines *who* can levy on a writ of execution issued by a federal court. *United States ex rel. Tanos v. St. Paul Mercury Ins. Co.*, 361 F.2d 838, 839 (5th Cir.) (Rule 4(c), not state rule, governs service of writs of garnishment issued in federal court), *cert. denied*, 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966); *see also Heritage House Frame and Moulding Co. v. Boyce Highlands Furniture Co.*, 88 F.R.D. 172, 174 (E.D.N.Y.1980) ("[I]t is clear that FRCP 4(c) is not affected by the strictures of state law. Thus service must be made by a United States Marshal...."). Rule 4(c)—which has since been re-designated as Rule

4.1(a)—does not give blanket authority for service of process by state sheriffs [1]:

> Process, other than a subpoena or a summons and complaint, shall be served by a United States marshal or deputy United States marshal, or by a person specially appointed for that purpose.

Fed.R.Civ.P. 4(c)(1) (West 1992). "Process" under this provision includes writs of execution. *See* 28 U.S.C.A. Rule 4 Practice Commentary at 108 (West 1992) ("Process other than a subpoena or summons includes such things as executions and attachments. . . ."). Because Sheriff Miller was not specially appointed, his execution of the writ and levy on Amtrak's property violated Rule 4(c) and was thus defective. We hold that, because service was defective, Amtrak is not liable for Miller's fee. The district court properly denied Miller's motion.

### B. *Waiver.*

■ Miller argues that, even if service was defective, Amtrak waived any objection to the effectiveness of service under Rule 12(h)(1) by not asserting an objection to service in Amtrak's January 12, 1993 motions to stay and quash the execution. Rule 12(h)(1) states:

> A defense or lack of jurisdiction over the person, improper venue, *insufficiency of process, or insufficiency of service of process* is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

Fed.R.Civ.P. 12(h)(1) (West 1995) (emphasis added). At the January 12, 1993 hearing on its motion to quash or stay execution, Amtrak argued that the person who received the writ of execution was not authorized to accept service, but Amtrak did not argue that service was in any other way deficient. Miller argues that Amtrak thereby waived its

defense of insufficient service of process, and is now barred by Rule 12(h)(1) from asserting this defense in opposition to his motion for sheriff's fees.

We reject Miller's argument for two reasons. First, Rule 12(h) does not necessarily preclude a party from raising a defense of ineffective service of process where process is served pursuant to *post*-judgment proceedings. Rule 12(h) was intended to "eliminate the piecemeal assertion of Rule 12 defenses" by forcing litigants to voice jurisdictional objections before the court wastes its time adjudicating issues over which it has no jurisdiction. 2A Moore's Federal Practice ¶ 12.23; *see also* Wright & Miller § 1391.

Second, it would be inequitable to charge Amtrak with waiver of its defense of insufficient service given the situation in which Amtrak was placed by Miller's actions. Miller's sudden levy on an in-service locomotive delayed service and threatened great harm to Amtrak's business, not to mention its passengers. This genuine emergency forced Amtrak into court that very afternoon with its motions to quash and stay execution. In the heat of this commotion and with Amtrak's need to seek relief instantly, Amtrak cannot be deemed to have waived a defect in service, particularly since the writ was facially proper. As it happened, Amtrak raised the issue in the next set of papers it filed with the district court. We hold therefore that, under principles of equity and fairness embodied in Rule 1 (all Rules should be construed to "secure the just, speedy, and inexpensive determination of every action"), Amtrak's did not waive its defense of deficient service of process.

### C. *Miller's Other Arguments.*

■ Miller raises a variety of other arguments in his brief, none of which warrant much attention. For example, Miller points out that the actual writ of execution was directed to the "sheriff," not the United

---

**1.** Effective December 1, 1993, Rule 4(c) was redesignated as Rule 4.1(a). Rule 4.1(a) provides that

> process other than a summons . . . or subpoena . . . shall be served by a United States marshal, a deputy United States marshal, or a

persons specially appointed for that purpose. . . .

Fed.R.Civ.P. 4.1(a) (West 1995). We refer to it as Rule 4(c), however, since that was its designation at the time that Miller levied on Amtrak's property.

States marshal. *See* Plaintiff's Brief at 24. He contends that this amounts to an "appointment" as a special deputy United States marshal, granting him authority under Rule 4(c) to levy on property to secure a federal judgment. However, Rule 4(c) contemplates an appointment by the court; here, no such appointment was made in the writ of execution. Miller evidently believes that the two boilerplate documents accompanying the writ constitute an appointment, but these documents simply provide instruction for executing the writ. Miller's other arguments, based on the idea that Connecticut law overrides Rule 4(c), misconstrue Rule 69(a).

## CONCLUSION

For the foregoing reasons, the district court's March 31, 1995 Ruling and Order are affirmed.