Hanley C. CLARK, Plaintiff,

v.

John H. WILBUR, et al., Defendants.

Civil A. No. 2:92–0935.

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 11, 1996.

Joshua I. Barrett, Rudolph L. DiTrapano and Debra L. Hamilton, DiTrapano & Jackson, Charleston, WV, Ellen G. Robinson, C. Philip Curley, Mary Cannon Veed, Cynthia H. Hyndman and Alan F. Curley, Robinson, Curley & Clayton, P.C., Chicago, IL, for plaintiff.

John H. Wilbur, Jacksonville, FL, pro se.

Dudley D. Allen, Jacksonville, FL, pro se.

Frank E. Clark, Jr., Jacksonville, FL, pro se.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiff's motion to compel Defendants to deliver certain assets in partial satisfaction of judgment.[1] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### I. INTRODUCTION

On July 7, 1995 the Court entered judgment against Defendants Dudley D. Allen and John H. Wilbur in the amount of $6,198,-591.34 and against Defendant Frank E. Clark, Jr. in the amount of $2,107,521.34. On September 6, 1995 the Court granted Plaintiff's motion to register the judgment in the Middle District of Florida and in any other district where Defendants' assets might be found.

Following post-judgment discovery pursuant to *Rule* 69(a), *Federal Rules of Civil Procedure*, Plaintiff located certain assets of Defendants as follows: (1) **Wilbur**—(a) Peak Retirement Individual Retirement Account (IRA) (valued at approximately $40,000); (b)

---

1. The same day Plaintiff filed this motion, he also filed an emergency motion requesting Defendants notify him prior to disposing of certain assets. On November 21, 1995, following a telephonic hearing, the Court granted Plaintiff's motion. The Court found and concluded, *inter alia*, as follows: (1) personal and subject matter jurisdiction existed to enforce the Court's judgment of July 7; (2) Plaintiff's registration of the judgment in the Middle District of Florida pursuant to 28 U.S.C. § 1963 and his application in Florida for relief concerning assets that are not the subject of the instant motion do not affect this Court's jurisdiction to enforce the July 7 judgment; (3) *Rule 69, Federal Rules of Civil Procedure*, authorizes the Court to direct that enforcement of a judgment be other than by writ of execution; and (4) enforcement of the July 7 judgment shall be pursuant to the Court's personal jurisdiction over Defendants and ancillary powers to enforce its own judgment, rather than by writ of execution.

Charles Schwab IRA (valued at approximately $18,000); and (c) a beach house in Ponte Vedra, Florida (valued at approximately $1,000,000);[2] (2) **Allen**—(a) Merrill Lynch IRA (valued at approximately $2,500); (b) Mass Mutual IRA Annuity (valued at over $100,000); and (3) **Clark**—Life USA IRA Annuity (valued at approximately $38,000). None of these assets are involved in the post-judgment proceedings taking place in the Middle District of Florida.

Commissioner Clark requests the Court order Defendants to convert their IRAs to cash and to deliver the proceeds in partial satisfaction of the judgment. Clark further asks Defendant Wilbur be compelled to deliver a deed for, or otherwise assign, his interest in the house subject only to West Virginia's five thousand dollar ($5,000) homestead exemption. The Defendants interpose a number of putative defenses to Plaintiff's requested relief.

## II. DISCUSSION

### A. Jurisdictional Issues:

■ Defendants first assert this Court's subject matter jurisdiction to enforce judgments is limited by 28 U.S.C. § 1963 and 28 U.S.C. § 2413. Section 1963 provides, in pertinent part, as follows:

> A judgment in an action for the recovery of money or property entered in any district court ... may be registered by filing a certified copy of such judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963.

Section 2413 provides as follows:

> A writ of execution on a judgment obtained for the use of the United States in

any court thereof shall be issued from and made returnable to the court which rendered the judgment, but may be executed in any other State, in any Territory, or in the District of Columbia.

28 U.S.C. § 2413.

■ Relying upon dicta from a Tennessee district court decision from over a decade ago,[3] Defendants assert the following argument:

> 28 USCA § 2413 limits extraterritorial writs of executions to judgments in favor of the United States. Only the United States, by operation of § 2413 is given the benefit of a single state's laws on execution/exemption [that of the state where the rendering Federal Court is located] no matter where the execution is actually executed.

Defs.' Resp. at 2. First, Defendants proffer no authority that holds § 1963 is the exclusive remedy available to judgment creditors under the present circumstances. Second, as noted by Clark, § 2413, by its very terms, has no application to the instant case. Section 2413 merely allows the United States, acting as a judgment creditor, to undertake nationwide execution activities and the statute's purported applicability by analogy to the instant case is inappropriate. Finally, Defendants' argument amounts to nothing more than a straw-man defense—Plaintiff is not seeking, nor could he, an order for the Marshal to *execute* on property located in Florida. Rather, Commissioner Clark seeks a turnover order, enforceable through the Court's contempt powers, against parties over whom it properly has jurisdiction, for the delivery of property under Defendants' control. Consistent with this request, the Court previously ruled, "[p]ursuant to *Rule 69*, ... that enforcement of its July 7, 1995 judgment shall be pursuant to the Court's personal jurisdiction over Defendants and ancillary powers to enforce its own judgment, *rather than by writ of execution.*" *Clark v.*

---

**2.** Wilbur owns this house as a tenant in common with his ex-wife. He has claimed the house as his homestead for exemption purposes.

**3.** *United States v. Palmer,* 609 F.Supp. 544 (E.D.Tenn.1985).

*Milam,* No. 2:92–0935, slip op. at 2–3 (S.D.W.Va. Nov. 21, 1995) (emphasis added).[4]

■ The Court's exercise of ancillary powers in aid of judgment collection clearly is warranted by recent, controlling Circuit precedent pronouncing "[i]t is black letter law that":

> "the jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.... Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."

*Thomas v. Peacock,* 39 F.3d 493, 500 (4th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1995) (quoting *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867)). The Court of Appeals went on to observe explicitly "federal courts have 'ancillary' jurisdiction over enforcement of judgments."[5] *Id.* Defendants' argument lacks merit.

■ Defendants next assert Plaintiff's registration of the judgment in the Middle District of Florida somehow divests or circumscribes this Court's jurisdiction to order the turnover of assets found in Florida. First, none of the assets Plaintiff seeks here are involved in the Florida proceeding.[6] Second, Defendants cite only limited authority for their argument, none of which is supported by the language of § 1963. Further, such a result would conflict with the teachings of *Riggs* and *Peacock* that a rendering court's jurisdiction continues until the judgment is satisfied. For these and other reasons, the Court concludes (1) it has jurisdiction over this matter; (2) § 1963 is not the exclusive remedy in this instance, and (3) Plaintiff has not waived the remedy of a turnover order by registering the judgment in Florida.[7]

4. Defendants halfheartedly assert enforcement of the judgment must be accomplished solely by writ of execution. The text of *Rule* 69(a), however, which deals with the process to enforce a money judgment, provides such enforcement will occur via "a writ of execution, *unless the court directs otherwise." Id.* (emphasis added). *Laborers' Pension Fund v. Dirty Work Unlmtd., Inc.,* 919 F.2d 491, 494 (7th Cir.1990) (recognizing applicability of "unless" clause where appellant argued a writ of execution rather than a turnover order was the proper enforcement mechanism). The Court is aware of some authorities cautioning this portion of *Rule* 69(a) "does not grant unlimited authority to the district court to enforce money judgments by means other than execution." *See, e.g.,* 7 James W. Moore, *Moore's Federal Practice* § 69.03[2] (2d ed. 1994). *But see* 12 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3011 (1973) (failing to mention any limitations on district court's use of the "unless" clause).

The noted authority does not affect the Court's use of the "unless" clause in this case. First, there are no limitations on use of the "unless" clause stated in the text of *Rule* 69(a). Second, the same authorities who suggest a limited reading of the Rule nevertheless recognize enforcement by means other than a writ is entirely appropriate when "execution would be an inadequate remedy." *Id.* Even if the caveat limiting the language of the Rule is an accurate statement of current law, the Court does conclude execution is inadequate to enforce the judgment under the circumstances of this case.

5. Despite Plaintiff's reliance on *Peacock* in his opening brief, Defendants fail to acknowledge, much less distinguish, that decision's bearing on the putative jurisdictional challenges raised.

6. One asset only is at issue in the registration proceedings taking place in Florida. In those proceedings Plaintiff seeks a house owned by Wilbur under a fraudulent transfer theory because Wilbur transferred the house, apparently his true residence, post-judgment to his best friend, a Florida resident and former trustee of the GW Corp. ESOP, allegedly at half the house's value. Wilbur now claims he is living in the Ponte Vedra house with his ex-wife, whom he divorced approximately fifteen years ago.

7. Defendants also assert redemption of Defendant Allen's Massachusetts Mutual Annuity requires surrender of the contract itself. In a half-page argument, Defendant Allen claims he cannot turnover or redeem the contract because he gave it to his wife prior to the Court's hearing on Plaintiff's emergency motion. *See supra* note 1. Defendant Allen claims his wife, on behalf of herself and her minor child, asserts a possessory lien over the contract to protect her and her child's interests as beneficiaries. Defendant Allen also asserts this Court does not have personal jurisdiction over his wife or child.

As correctly noted by Plaintiff, Defendant Allen has offered no evidentiary support for his contentions that (1) the contract is in his wife's possession; (2) the contract must be physically surrendered to receive the cash value; or (3) his wife is unwilling to return the contract. The Court therefore must conclude Defendant Allen can secure possession of the contract or demand its

## B. Exemption of the Requested Assets:

 Defendants assert Florida law should be applied in determining if the assets in question are exempt from a turnover order. Plaintiff seeks application of West Virginia law. *Rule* 69(a) provides in pertinent part as follows:

> The procedure on execution, in proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought....*

*Id.* (emphasis added). The mandate requiring resort to the law of the state where the district court is held applies to questions relating to whether assets are exempt from collection.[8] *See, e.g., Chicago, Rock Island & Pac. Ry. Co. v. Sturm*, 174 U.S. 710, 717, 19 S.Ct. 797, 800, 43 L.Ed. 1144 (1899) (stating "[e]xemption laws are ... part of the remedy and subject to the law of the forum"); *Johns v. Rozet*, 826 F.Supp. 565, 567 (D.D.C.1993); *Pallante v. Int'l Venture Invs., Ltd.*, 622 F.Supp. 667, 668 (N.D.Ohio 1985) (stating "[g]enerally ... questions of exemption are determined solely by the laws of the forum"); *Marine Midland Bank v. Surfbelt, Inc.*, 532 F.Supp. 728, 729 (W.D.Pa.1982) (stating "the law of the forum governs questions of exemption"); 11 Thomas J. Goger et al., *Federal Procedure* § 31:21 (1982). Defendants have cited no authority to the contrary in support of their position and the Court has located none. Accordingly, the Court concludes West Virginia law controls the question of whether the requested assets are exempt. The Court must now determine whether the requested assets are exempt under West Virginia law.

 While Plaintiff goes to great lengths to demonstrate none of the requested assets are exempt under West Virginia law, Defendants curiously have sought an exemption under West Virginia law for one asset only,

Allen's Massachusetts Mutual Annuity. Defendant Allen asserts in off-hand fashion his wife's interest as a life insurance beneficiary under the contract and that the contract itself as a putative life insurance policy, is exempt under *West Virginia Code* § 33-6-27.

Section 33-6-27 provides, in pertinent part, as follows:

> If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance or executors or administrators of such insured or the person so effecting such insurance, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insure if the beneficiary or assignee shall predecease such person.

*Id.*

 It is well-settled the burden is on the debtor Allen who seeks to enforce or establish an exemption to show, *inter alia,* (1) he is within the class entitled to the exemption, (2) the property is of the type exempted, and (3) he has taken the required steps to establish his right. *In re Strehlow,* 84 B.R. 241, 244 (S.D.Fla.1988); *In re Erickson,* 63 B.R. 632, 635 (W.D.Wis.1986), *aff'd,* 815 F.2d 1090 (7th Cir.1987); 35 C.J.S. *Exemptions* § 160 (1960). Indeed, it has been stated as follows:

> A debtor claiming an exemption generally must prove that his claim comes within the exemption provisions. Where an issue

---

redemption without such possession. Further, even if there was some evidentiary basis for Defendant Allen's argument, there is a presumption the transfer was made fraudulently in order to defeat the judgment entered by the Court. The Court need not reach that question, however,

given the absolute lack of any evidentiary foundation for Defendant Allen's argument.

**8.** It is also abundantly clear West Virginia law permits entry of the turnover order requested by Plaintiff. *See infra* section II.C.

is left in doubt by the proof so that a court would be required to speculate, the party on which the burden of proof ultimately rests must lose.

31 Am.Jur.2d *Exemptions* § 367 (1989).

Plaintiff asserts Allen has failed to satisfy his burden of proving entitlement to a § 33–6–27 exemption. Clark argues "it is by no means certain that annuities of the type in defendants' IRAs would qualify as 'life insurance' under the statute." Pl.'s Reply at 9.[9] The Court agrees. Allen has offered no evidence concerning the characteristics of the annuity in question nor how those characteristics might implicate the requested exemption. Accordingly, the Court concludes the annuity in question is not exempt under § 33–6–27.

### C. Compliance with West Virginia Code § 38–5–4:

■ Defendants also challenge Plaintiff's reliance on *West Virginia Code* § 38–5–4 to support the turnover order. It provides in pertinent part as follows:

Any real estate outside this State, to which it may appear by such examination that the execution debtor is entitled, shall be forthwith conveyed by him to the officer to whom was delivered such fieri facias or execution; and any money, bank notes, securities, evidences of debt, or other personal estate, which it may appear by such examination are in the possession or under the control of such debtor, though in the hands of some other person, shall be delivered by him, as far as practicable, to the same officer, or by such other person and in such manner as may be ordered by the commissioner; and any chose in action or other intangible property shall be assigned or conveyed to the officer.

*Id.* Defendants assert "[b]efore a debtor can be ordered to do anything under § 38–5–4, he must be served with a summons to appear before a commissioner in chancery . . . [under] § 38–5–1 and § 38–5–2." Defs.' Resp. at 10. Even assuming the peculiar and spe-cific process outlined in article five is applicable under these circumstances,[10] this Court has previously recognized "the propriety of modifying state procedure to conform with federal practice." *Chicago Pneumatic Tool Co. v. Stonestreet*, 107 F.R.D. 674, 678 n. 7 (S.D.W.Va.1985) (Haden, C.J.) (recognizing " 'Rule 69(a) . . . makes applicable state procedural rules for the enforcement of judgments [but that] . . . . [t]hese state rules are to be applied in a *common sense manner*, of course, and those which make sense only when applied to state courts need not be imported into federal practice.' ") (quoting *Anderson v. Tucker*, 68 F.R.D. 461 (D.Conn. 1975)) (emphasis added); *see also* Wright & Miller, *supra* § 3012 (stating "[s]ubstantial compliance with the procedural provisions of state statutes is sufficient") (citing cases).

■ As noted above, substantial compliance with, rather than lockstep and slavish adherence to, state procedures is all that is required under *Rule* 69(a). A common-sense reading of § 38–5–4, combined with observance of traditional notions of due process and the Court's personal jurisdiction over the parties and the subject matter, allows the Court to order the relief requested by Commissioner Clark pursuant to Federal *Rule* 69(a) and *West Virginia Code* § 38–5–4. Defendants' arguments have no merit.

### III. CONCLUSION

Based on the foregoing, the Court OR-DERS as follows:

1. That, with respect to the property located at 837 Ponte Vedra Boulevard, Ponte Vedra Beach, Florida, Defendant Wilbur shall deliver a deed for such to Plaintiff assigning all of his right, title and interest in the property to Plaintiff, subject only to the West Virginia homestead exemption;

2. That, with respect to the Merrill Lynch IRA, Wilbur's Charles Schwab IRA, and the Peak Retirement Account (to the extent it contains assets other than annuities), Defendants Allen and Wilbur are OR-

---

**9.** Plaintiff has also raised additional substantial arguments challenging Defendants' asserted exemption. While these arguments appear meritorious, the Court need not reach them.

**10.** As discussed in Plaintiff's reply brief, this is a substantial assumption.

DERED to convert these assets to cash and to withdraw the cash from their IRA accounts and, net of applicable tax penalties, deliver such cash to Plaintiff; and

3. That with respect to the Peak Retirement Account (to the extent it contains annuities), the Massachusetts Mutual IRA Annuity and the Life USA IRA Annuity, Defendants Wilbur, Allen and Clark shall surrender such annuities for their cash value and deliver such cash, net of any applicable tax penalties, to Plaintiff.